Our last case for argument today is 23-2143 Apex Bank v. CC Serve Corp. I'm Michael Bradford here on behalf of the appellant Apex Bank. The primary issue on this appeal is the board's failure to give appropriate consideration to the extensive evidence of third-party use of Aspire and Aspire formative marks for credit card services and other banking and financial services. Well, let's be more specific, isn't the real issue that the board messed up the sixth DuPont factor? Correct. There's a whole bunch of DuPont factors and they messed up number six, is that right? They messed up number six. That's correct. Okay, so tell me how they messed it up. They messed it up in two ways. First, we'll get to their failure to consider all of the third-party use, but they did consider nine examples of third-party use for credit card services. So the opposer's mark is Aspire for credit card services. The record shows five other entities using Aspire for credit card services. Four other entities using marks containing Aspire for credit card services. I thought your argument was going to be a little simpler. I thought your argument was going to be that the law says they have to consider similar goods and services and the board expressly said, no, you have to consider only the same ones. And so I thought your argument was going to be way simpler than starting with the nine versus the 32 versus the whatever. Well, Ann, I was going to get to that, but I can't get to that part. Well, I think the simpler part is the better part, so why don't you start with that? Okay. We'll start there. So yes, the sixth DuPont factor is you're supposed to consider similar marks for similar goods and services. The board essentially said, when the... Not essentially, what the board actually said. I'm trying to help you here. Don't bite me. Well, when the applicant and the opposer's marks covered the same...  What did the board actually say? Sorry.  Yes, Your Honor. The party's services are legally identical. Page? Oh, sorry. On page 47. Okay.  And they say the party's services are legally identical to the extent applicants' banking and financing services encompass opposer's credit card services. Accordingly, for purposes of the sixth DuPont factor, the properly defined relevant public is consumers of credit card services. In assessing the strength of opposer's mark, we therefore focus solely on those marks for credit card services identified above. So, what they did is they said, we're only going to look at third-party marks for the identical services. Correct. We're not going to look at third-party marks, even though the law says to look at ones for similar goods and services, we're only going to look at the ones for the exact same goods and services. Correct. They said the rest are essentially irrelevant. Right. And you had others in this record that you wanted them to look at, right? There were a lot more. Correct. There were over 30 other marks. So, there are nine for credit card services and over 30 others for checking accounts, for debit card services. All relating to banking. All related to banking.  And they said those are not relevant. So for example, if you go into Chase and you get a credit card, they try to give you a checking account, they try to give you a banking account, they try to give you a loan. Those are all directed to the same relevant public. This is, what do consumers think? When you walk into Chase, they try to give you a loan? Like, that's what they do with you? They don't do that with me. I walk in the bank, they don't say, I want to give you this and I want to give you that. Unfortunately, I have a few loans, but so they said these are not similar goods and  And they relied on the national cable case for this decision and the homeowners' stakes case. Where did they say these are not similar goods and services? Well, they say they're not. I'm sorry. Yeah, I know. I'm trying to keep you on track. They refuse to consider them. And they rely on the national cable. Yeah, can you help me with that case? I mean, there's some language in that case that seems to be consistent with what they did, but not consistent with what the law actually is. So I think the national cable case involves two parties that were using ACE, A-C-E, for award ceremonies directed to the film industry. And there the board looked at other ACE marks for this, all kinds of goods and services that weren't directed to the film industry. And there you were, both parties were looking at the same, identical. Yeah, they were using the mark for the same services. Now, that's not the case here, right? Well, it's not. No, but again, I don't think I'm, I'm not trying to trick you. On other parts of the DuPont factors, they actually did argue, the opposer argued that they did have to look beyond just credit card services to determine the relevant public, which I found, and the board accepted it there, that you could look to the general banking versus just credit card. In the second DuPont factor, they actually looked at- How can they say it's relevant for that, but not relevant for this? Oh, I completely agree. Well, they just got the law wrong. Exactly. Because, and in the end, I don't even know, do we, do we have to, I mean, we have to send it back, I think, but they seem to have, in the second DuPont factor, made the fact finding that all those other marks you wanted to look at are directed to similar services. Exactly. The way you look at this- So that part's easy. Is you look at all these third party registrations, and it shows that Cathay Bank offers all these services. They're all offered to the same relevant public. But what we can't do, while we can tell the board, look at your own fact findings, what we can't do is then weigh it all for them, right? We should send it back for them to do it, correct? For weighing, correct, yes, you should send it back to them for fact finding. But I think you can say that it's a commercially weak mark. You can make that determination based solely on the credit card services. That feels like a fact finding. But if you look at the Spiridon case- That would be Judge Hughes' job, Nick. We already established that. You all get up here and ask for too much. It sounds like you're going to get part of what you want. Why do you want us to make fact findings on appeal? I'm basing it on the Spiridon case. They said there were three identical marks used for identical services as the opposer. And with that situation, they said you must find it's a commercially weak mark. That was a fact finding. And I just don't see- If three identical marks used- For identical services. Yeah, but here, that's the problem. This is not identical services. I mean, the board would apply the incorrect law when it said it had to be identical services. But what you're saying is it could be similar services. But that case doesn't help me because then you still have to determine whether the similar services are- The marks there are enough to make it weak. Which sounds very fact finding to me. Correct. But if- Let's say I was wrong. And you can't consider these other 30 marks. Under the Spiridon case, if you only looked at the credit card services, there are five identical aspire marks for identical credit card services as the opposer. In Spiridon, there were three identical for identical services. And there, the Federal Circuit said, in that situation, you must- It sounds like you're making an entirely different argument. Which is, even if the board was wrong, the marks they did find identical is enough to render this a weak mark. That sounds like a substantial evidence argument, though. I don't see why you want to go there. Substantial evidence is not a high hurdle for them to overcome. Yes, I mean, I'll stick with the de novo review of the legal test. Sounds like a really good plan. Okay, thank you, Mr. Baffert. Why don't you send the rest of your time for rebuttal? Mr. Padgett. Please support Austin Padgett for C.C. Serve. Turning to all these points, I think if you look at- The board's decision was really guided by Apex's trial brief. If you turn It's 70-32 in the record. One comment. I'll definitely let you walk us through that trial brief. They can't stipulate to bad law. The law is for the judge and it can't be stipulated to. And so, if the board misapplied the law in terms of, I said the wrong law and then I applied it, not just misapplied as an application law in fact, but actually state the law wrong, they can't stipulate that away. They can't do that. So, here on page 47 it looks like the board stated the wrong law with regard to DuPont factor number 6. So tell me what am I missing about that? On page 40 is where the board goes through the DuPont factor and states the similar marks for similar goods and services standard. And while I agree that the bad law can't be waived, the board is tied down by the record that it receives from the parties. But can you respond specifically to the point raised on appendix page 47 where the board talks about the third party aspire formative marks for services other than credit card services are essentially irrelevant. Can you respond to that? Right. That language is taken from the Omaha stakes quote that's up above the National Cable, citing National Cable as well. So, the essentially identical or essentially irrelevant language comes from that case where this court's warning the board not to stray too far in what it's considering the scope of what it's looking at when it's thinking about similar. Is it your opinion that the board was perfectly fine to only look at the 9 and not look at the other 30 plus? It didn't have any basis to look at the other 30 plus. Because banking and financial services aren't similar to credit card services?  the record isn't built that way, Your Honor. If you go to their brief... What do you mean when you say the record isn't built that way? Right. In their brief, their thesis statement for similarity is and this is from 7032 the word aspire is weak as applied to credit card services and should be afforded a narrow scope of protection. And then the Apex provides 16 a list of 16 items that it goes through for credit card services credit card and other credit offerings throughout the country. And that's what it gives the board. And then it makes a second statement on 7034 where it says that it's going to provide a list of other items that relate to the financial services industry more broadly. So just so I understand what you're arguing are you saying that opposing counsel did not provide that group of 40 plus and only provided the 9? Or what are you indicating? It provided the group of 40 plus, Your Honor. But if you look at it like a dartboard it said, okay, here's the identical services and here are the similar services. Because if you look at just even number one If you agree that they're similar services then the law says they have to be considered. Maybe they're not as relevant because they're related to the broader universe rather than the specific credit card. But they still have to consider them in terms of similar services, not exclude them altogether. Your Honor, I think the board lists these items and considers them and finds them not appropriate. No, no, no. It says essentially irrelevant. Essentially irrelevant is not considering. Right. Because of the shotgun approach that Apex took and included real estate investments real estate rentals all sorts of things in this list of items. You don't even get into checking accounts until into the 30s. And so it's the burden. But are you trying to suggest that the board is somehow off the hook because opposing counsel included more than you think was necessary? Is that what your argument is? My argument is that there's no corroborating evidence demonstrating by any of these items. The identical items I can see certainly. They're automatically or inherently relevant. Wait. I'm sorry. I'll let him answer your question. Sorry about that. No, that's okay. Go ahead. Sure. There's no corroborating evidence. And the board agreed with us that there's nothing that says well, how am I supposed to understand similarity of these things? Why don't they have to with respect to DuPont Factor VI need to consider the similar ones as well? What is your argument as to why that is not necessary? Because the Will I Am case, the I Am Symbolic case, states that for third-party items you need to have some sort of corroborating evidence as to the probative value that they provide in the way... Yeah, but under DuPont Factor II the board defined what amounted to similar, right? Under DuPont Factor II, what did they find? Right. The... They expressly found. It's an express fact-finding. What is it? That there are two items that their application and our registration were identically or legally identical. I don't think so. I think that they... I think Factor II is similarity of services, right? DuPont Factor II, similarity of services? And the board found that... Correct, Your Honor. On page 28... The board rejected the argument that credit and banking were not similar. They found that they were sufficiently similar. How can they make that finding for Factor II and make the opposite finding for Factor VI? Because the finding that they're asserting there is that their application is for banking and financing services is so broad that it includes my client's credit card services. And so there's inherent overlap. And they took a look at testimony, definitions of banking, bank, finance, all things that we provided to show them, you know, that these things include our client's services. And so when you're weighing... They're similar. They're legally identical. Because our... I don't think that's helping your argument when you say that. Well, not that every banking service or that every financing service would be a credit card service. But that credit card services are underneath that umbrella. As to the second and first factors, we stand on our briefs as far as that's related to. Are there any other questions? Okay. Thank you, Mr. Padgett. Mr. Bradford, you have rebuttal time. Your Honors, have any other questions? That was an excellent rebuttal. Case is taken under submission.